UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| Wave Neuroscience, Inc., a Delaware corporation,<br><br>    Plaintiff/Counterclaim Defendant,<br><br>v.<br><br>Peaklogic, Inc., a Delaware corporation; and Kevin T. Murphy, M.D., a Professional Corporation, doing business as Mindset,<br><br>    Defendants/Counterclaim Plaintiffs. | Case No.:  21cv1330-CAB-AGS<br><br>**ORDER ON PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT**<br><br>[Doc. No. 209] |

    For at least the third time the 2019 settlement agreement between defendant Kevin Murphy and Newport Brain Research Laboratory (NBRL) is before the Court to consider its relevance to this pending litigation.  In a prior lawsuit, NBRL alleged that Murphy's treatments using transcranial magnetic stimulation violated NBRL's intellectual property rights, contract rights and other torts.  NBRL and Murphy reached a settlement of that dispute with a mutual release. [Doc. No. 83-1, sealed.]

    Previously defendants moved for summary judgment that the 2019 settlement release which extends to related entities of the settling parties covers Wave Neuroscience (Wave) and bars this action.  The Court considered this on two separate motions filed by defendants and despite compelling evidence in support of that contention, the Court found

material facts in dispute regarding the nature of the relationship between NBRL and Wave. The motions were therefore denied. [Doc. Nos. 105, 151.]

Now Wave moves for a summary adjudication of the scope of the 2019 release, contending that even if applicable to Wave, it does not extend to the patent infringement claims at issue in this litigation. [Doc. No. 209.]  Defendants opposed. [Doc. No. 219.]

The interpretation of a release is governed by the same principles applicable to any other contract.  A contract must be so interpreted as to give effect to the mutual intention of the parties as it existed at the time of contracting, so far as the same is ascertainable and lawful.  To ascertain the parties' intent the Court must start with the language of the contract itself and if that language is clear and explicit, it governs. *See Pinkerton Tobacco Co., LP v. Art Factory AB*, 2021 WL 4902497, *2 (C.D. Cal. June 11, 2021) (applying California law to contract interpretation).

The mutual release language of the 2019 Settlement Agreement is broad and applies to the acts alleged in the Action.  On its face it releases any and all causes of action, claims, demands of every nature, kind, and description whatsoever, whether known or unknown, suspected, or unsuspected, which the Parties ever had, now have or hereafter may have against each other by reason of any matter, cause or thing whatsoever arising out of the acts alleged in the Action. [Doc. No. 83-1, at 3, ¶3.2.]  The release further waives any rights a party may have under California Civil Code §1542, acknowledging the parties are forever settling, releasing, and discharging claims arising out of the facts alleged in the action. [Id., at 3, ¶4.]

Plaintiff contends that this release should only apply to the legal claims raised in the prior action and the "acts alleged in the Action" should be interpreted as the causes of action alleged which did not include claims of patent infringement.  A plain reading of release language however is much broader than the specific causes of action asserted in that case against the acts alleged in the prior litigation.

The release extinguishes forever any claims in law or equity, known, unknown, existing or later obtained, by NBRL and its related entities, against Murphy and his related

entities by reason of any matter whatsoever arising out of the acts that Murphy was alleged to have done in the prior litigation. While the patents at issue were not asserted in the prior litigation, if the acts alleged in that litigation are the basis for the patent infringement claims asserted in this case, the patent claims even though unknown and later obtained are released as they are claims arising out of the acts alleged in the prior litigation.

Interpreting the release language as plaintiff contends such that the release only covers causes of action asserted in the prior litigation, would render meaningless the plain and broad language of the release extending to any claim of any nature that may arise out of the defendant's acts alleged in the prior litigation, even if that claim was unknown and later obtained after the time of release. The Court is not persuaded by plaintiff's interpretation. It is contrary to the plain language of the release.

Plaintiff asserts that the extrinsic evidence of the release negotiations demonstrates that the intent of the parties was to release only the claims raised in the earlier litigation, i.e., trade secret misappropriation, breach of a Nondisclosure Agreement, copyright infringement. In those negotiations, NBRL offered a draft settlement agreement that sought to characterize the release as "limited" and struck proposed non-limiting examples of the types of claims it would cover, including a reference to patent infringement. [Doc. No. 134, at 28-33, sealed.] The draft also struck the provision that California law would apply. [Id. at 32.]

The final version executed by the parties however is a general release that applies California law. While the non-limiting examples of the kinds of claims released were removed, the actual release language is not limited to the causes of action asserted but releases any matter whatsoever arising out of the acts alleged in the Action, past present and future. Acts alleged in the earlier action included that the defendant was unfairly competing with NBLR by treating patients with NBLR's proprietary Magnetic EEG guided therapy applying Transcranial Magnetic Treatment protocols by first obtaining biometric data, analyzing it, and providing specifically tailored treatment to each patient. [Doc. No. 125-5, at 28-31.]

The Court finds that plaintiff's patent infringement action in this case, to the extent it is alleged against the defendant's same acts that gave rise to the first litigation, is within the scope of the release. *See Augustine Med., Inc. v. Progressive Dynamics, Inc.,* 194 F.3d 1367, 1371-72 (Fed. Cir. 1999) (agreements with broad expansive terminology that release all causes of action of every kind which a party has or might have against that other arising out of acts referred to in the pleadings is not limited to the causes of action then at issue or resolving past disputes). Consequently, if the release is found to apply to plaintiff as a related entity to NBRL, and there is no material difference in the acts alleged to infringe the patents in this case and the acts released in the prior litigation, the release would extinguish the plaintiff's claim.

Plaintiff's motion to interpret the scope of the release as inapplicable to this case is therefore DENIED as stated above and the contract is interpreted in accordance with this order.

It is **SO ORDERED.**

Dated: September 3, 2024

Hon. Cathy Ann Bencivengo
United States District Judge